UNITED STATES *v.* CARL ZEISS, INC. (No. 4210)[1]

United States Court of Customs and Patent Appeals, May 1, 1939

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument April 13, 1939, by Mr. McDermott and Mr. Bevans]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, holding certain "Nordenson" or "retinal" cameras dutiable at 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930 as claimed by the importer, rather than at 60 per centum ad valorem as "testing or recording instruments for ophthalmological purposes" under paragraph 228 (a) of that act as assessed by the collector at the port of New York.

The statute, so far as pertinent, reads:

PAR. 228. (a) Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prism-binoculars, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, slit lamps, corneal microscopes, optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: *Provided*, That if the photographic lens is the component of chief value of the camera or of the part in which it is imported, such camera or part, including the photographic lens, shall be dutiable at the rate applicable to such photographic lens when imported separately   *   *   *.

Photographic lenses, imported separately, are dutiable at 45 per centum ad valorem under paragraph 228 (b) of the Tariff Act of 1930.

It appears from the record that the involved cameras are used solely for the purpose of photographing the retina of the eye, and that they cannot be used for any other purpose. They are equipped with arc lamps for the purpose of giving proper illumination for the taking of photographs. The lamps are necessary and constituent parts of the cameras.

On the trial below, counsel for the importer—appellee—introduced in evidence Exhibit 1, which is a Nordenson camera. With the consent of counsel for the Government and by permission of the court, that exhibit was withdrawn and a pamphlet (Illustrative Exhibit A), on which appears a photograph of a Nordenson camera, was introduced in evidence as a substitute therefor.

14

The witness Victor M. E. Koch, vice president and technical director of the appellee company, described in detail the structure of the imported cameras as follows:

Q. Will you take the exhibit and point out to the court the parts whereby such photographs may be made?—A. Well, this is the photographic objective [indicating]; this is an arc lamp [indicating], mounted above, by means of which a powerful light is passed through a prism into a smaller prism, and subdivided, so that it can be passed into the eye. At the same time you obtain from this source illumination on the photographic plate. There is a focusing device on the principle of a reflex camera, by means of which one focuses the image of the fundus By rapid movement, when this object is sharply located, one can make the exposure by elevating the mirror by reason of a shutter here [indicating].

Judge SULLIVAN. Is that all included in exhibit 1?

Mr. BEVANS. Yes; that is the complete instrument. The only thing additional as shown in this illustration, is a table. That is the way it is imported, without the table. The table might correspond to a tripod.

It appears from Illustrative Exhibit A that—

*Photographs* of the fundus of the living healthy or morbidly affected eye are of great value in ophthalmic practice no less than in scientific research and for the purposes of teaching. *They provide an excellent means of obtaining demonstrable records of morbid changes of the retina in the various stages of the disease. Such photographs may be of the utmost value in the dignosis and prognostic observation as well as the treatment of many affections of the eyes and the system in general.* A good photograph is always far more complete and reliable than the most detailed and precise description and inevitably surpasses the most excellent drawing in the matter of faithfulness. [Italics ours.]

The chief problem involved in the construction of an apparatus for photographing the fundus of the eye consists in devising a combination which may be capable of producing a distinct image without flares due to reflections. In the retinal camera devised by Dr. Nordenson this requirement is realised by the application of the principle of Gullstrand's nonreflecting *central* ophthalmoscope, as embodied in the large simplified Gullstrand ophthalmoscope.

The image-forming rays pass through the median and optically more valuable portion, while the illuminating rays traverse the peripheral portion of the patient's pupil. The two systems of rays are sharply separated while passing through the refracting surfaces of the eye. This ensures the complete absence of flares due to reflection as well as the freedom of the image from haziness, and enables the optical combination to furnish distinct images of the finest details up to the edge of the field. The apparatus is in the form of a reflex camera with a compur shutter in conjunction with an illuminating arrangement of great light-transmitting power. The apparatus may thus be used for taking at short exposures a photograph of the fundus of any favourable moment, while the interposition of a greyed glass enables the operator to moderate the light during a prolonged period of observation and while arranging the image. When the shutter is released the greyed glass recedes automatically.

It is contended by counsel for the Government that as it appears from the record that the photographs taken by means of the involved cameras "provide an excellent means of obtaining demonstrable records of morbid changes of the retina in the various stages" and are of value "in the diagnosis and prognostic observations as well

as the treatment of many affections of the eyes," and as the cameras are used exclusively for photographing the retina of the eye they are covered by the provisions for "testing or recording instruments for ophthalmological purposes" contained in paragraph 228 (a), *supra*, and are more specifically provided for therein than as cameras under paragraph 1551, *supra*.

It is further contended by counsel for the Government that certain briefs filed before the Committee on Ways and Means of the House of Representatives (Tariff Readjustment, 1929, Vol. 2) by Bausch & Lomb Optical Co., Rochester, N. Y. (pp. 1581–1582), the appellee company (pp. 1576–1579), and E. Leitz, Inc., New York City (pp. 1584–1585) indicate that the involved cameras were represented to the Congress as being testing or recording instruments for ophthalmological purposes, and that as paragraph 228 (a) contains a provision for "testing or recording instruments for ophthalmological purposes," it was the evident purpose of the Congress to make the involved cameras dutiable under that provision.

We have carefully examined the briefs referred to by counsel for the Government, and, although certain testing and recording instruments for ophthalmological purposes are specifically mentioned therein (some of which are not *eo nomine* provided for in paragraph 228, *supra*), we are unable to find anything in those briefs to indicate that the companies presenting them intended to suggest to the Congress that Nordenson or retinal cameras, which were not mentioned, were either *testing or recording instruments* for ophthalmological purposes.

There are various instruments, some testing and some recording, used for ophthalmological purposes which are not provided for *eo nomine* in paragraph 228 (a), *supra;* for example, retinascopes, for viewing the retina of the eye; tonometers, instruments for measuring the tension of the eyeball; tonographs, recording tonometers; coreometers, apparatus for measuring the width of the pupil of the eye; keratometers, instruments for measuring the curvature of the cornea of the eye; perimeters, and self-recording perimeters, used to determine visual fields of the retina; and exophthalmometers, used for measuring the protuberance of the eyeball.

As is well known, there are many special forms of "cameras, panoramic, binocular, enlarging, etc." Webster's New International Dictionary. See also *United States* v. *E. Leitz, Inc.*, 24 C. C. P. A. (Customs) 139, T. D. 48622, where "Photo-micrographic cameras for photo-micrographing metals" were held to be dutiable as photographic cameras at 20 per centum ad valorem under paragraph 1551, *supra*.

The involved cameras are used for no purpose other than the taking of photographs, and the mere fact that they are used exclusively to photograph a particular object for a special purpose does not change

their status as photographic cameras. It is true they are used exclusively for ophthalmological purposes. However, the Congress did not provide in paragraph 228 (a) for all instruments used for ophthalmological purposes, but limited the provision therein to testing or recording instruments for ophthalmological purposes.

But one issue remains to be determined; that is, whether appellee established on the trial that the photographic lenses in the involved cameras were *not* the component of chief value of such cameras. If the lenses are not the component of chief value, the cameras are dutiable at 20 per centum ad valorem under paragraph 1551, *supra*. If the lenses are the component of chief value, the cameras are dutiable at 45 per centum ad valorem—the rate provided in paragraph 228 (b), *supra*, for photographic lenses—by virtue of the proviso clause contained in paragraph 1551, *supra*.

On the trial below the witness Koch testified that he had been employed by the appellee company for a period of twenty-six years; that for the six years prior to the taking of his testimony he was vice president and technical director of that company; that he was familiar with photographic cameras like those here involved and lenses therefor; that he had been dealing in such cameras since they were first produced, 1921; that in March 1931 his company imported lenses for a Nordenson camera; that the foreign sales price of such lenses was 260 marks, whereas, the total foreign sales price for a complete Nordenson camera was 1,300 marks, less 25 per centum (the value of the lenses being approximately one-fourth the value of the complete camera); and that, although his company had imported cameras like those here involved during the period from 1931 to the time of the exportation of the involved cameras (1935 and 1936) it had not separately imported lenses for such cameras, and that, therefore, he was unable to testify as to the exact value of lenses during that period. The witness testified, however, that, based upon his knowledge of the comparative values of lenses for, and other assembled parts of, the involved and like cameras, the lenses were not the component of chief value of such cameras.

Considering the wide divergence in 1931 in the value of the lenses as compared with the value of the other assembled parts of cameras like those here involved, we are of opinion that the testimony of the witness is sufficient to establish *prima facie* that the lenses were not the component of chief value of the involved cameras.

The Government submitted no evidence.

It is true, as argued by counsel for the Government, that it appears from the testimony of the witness Koch that the prices for Nordenson cameras varied during the period from 1931 to 1936. However, the witness testified that, although the prices of Nordenson cameras varied, the value of the lenses as compared with the value of the other

assembled parts of the cameras did not vary; that is to say, at no time during the period were the lenses the component of chief value of such cameras.

We are of opinion, therefore, as was the trial court, that the involved photographic cameras are dutiable as such at 20 per centum ad valorem under paragraph 1551, *supra*.

The judgment is *affirmed*.